IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VHV JEWELERS, LLC,

    Plaintiff,

        v.

CHAD F. WOLF,
Acting Secretary, U.S. Department of
Homeland Security, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-4479-TWT

OPINION AND ORDER

This is an Administrative Procedure Act case. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 21] and the Defendants' Cross Motion for Summary Judgment [Doc. 27][1]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 21] is DENIED and the Defendants' Cross Motion for Summary Judgment [Doc. 27] is GRANTED.

I.     Background

A. Statutory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, provides the basic structure of immigration law in the United States. In creating certain categories of immigrants and nonimmigrant aliens, the INA

---

[1] Since the filing of this action, Chad F. Wolf has become the Acting Secretary of the Department of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), Wolf is automatically substituted here as a party.

has defined a category of nonimmigrant aliens who:

> within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him.

8 U.S.C. § 1101(a)(15)(L). This category of individuals is commonly referred to as "intracompany transferees" or the shorthand "L-1" because of the definition's subsection.

Under the relevant regulations, intracompany transferees must have been employed for one continuous year in the previous three years by a firm, corporation, or other legal entity—in this context, a "petitioner"—in a managerial or executive capacity or one that requires specialized knowledge. 8 C.F.R. §§ 214.2(l)(1)(i), 214.2(l)(3)(iii). Further, a petitioner must show that the transferee is coming to the country temporarily in a managerial or executive capacity or to perform duties requiring specialized knowledge. 8 C.F.R. § 214.2(l)(3)(ii). Thus, the petitioner must show that both the beneficiary's foreign and domestic roles are either executive, managerial, or required specialized knowledge. The regulations define managerial capacity as an assignment within an organization in which the employee primarily:

(1) Manages the organization, or a department, subdivision, function, or component of the organization;
(2) Supervises and controls the work of other supervisory,

2

> professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (4) Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 C.F.R. § 214.2(l)(1)(ii)(B). The regulations define "executive capacity" as an assignment within an organization in which the employee primarily:

> (1) Directs the management of the organization or a major component or function of the organization;
> (2) Establishes the goals and policies of the organization, component, or function;
> (3) Exercises wide latitude in discretionary decision-making; and
> (4) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 C.F.R. § 214.2(l)(1)(ii)(C).

When a petitioner has been operating in the United States for less than a year, the organization is referred to as a "new office." 8 C.F.R. § 214.2(l)(1)(ii)(F). When a new office petitioner seeks admission for an intracompany transferee, the petition may be approved for a period not exceeding one year. 8 C.F.R. § 214.2(l)(7)(i)(A)(3). These petitions can be filed on a Form I-129, the form prescribed by the United States Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 214.2(l)(2)(i). This petition

3

requires evidence of the executive or managerial nature of the transferee's foreign and domestic employment. 8 C.F.R. §§ 214.2(l)(3)(ii)–(iv). A new office petition can be extended by filing another Form I-129, which must be accompanied by, among other things: evidence of the duties performed by the transferee during the previous year and the duties to be performed during the extension; a statement of the new operation's staffing, including evidence of the wages paid to the employees; and evidence of the operation's financial status. 8 C.F.R. § 214.2(l)(14)(ii). "The burden of proof is on the petitioner to make the requisite showing by a preponderance of the evidence." *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 868 (11th Cir. 2020) (citing 8 U.S.C. § 1361).

### B. Factual Background

In 2017, the Plaintiff, VHV Jewelers, LLC ("Petitioner"), filed a new office petition with the Defendants seeking L-1 nonimmigrant status for one of its employees, Viral Harish Vaidya ("Beneficiary"). (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 1–2.) The Defendants granted this petition, and the Beneficiary's L-1 status was in effect from October 20, 2017 until October 19, 2018. (*Id.* at 2.) On October 18, 2018, the Plaintiff filed a Form I-129 to extend the Beneficiary's admission to the United States. (*Id.*) On April 8, 2019, after a review of the petition, the Defendant USCIS issued a Request for Additional Evidence ("RFE") seeking more information on the nature of the Beneficiary's duties and the operation's staffing. (*Id.*) After review of the additional evidence,

4

the Plaintiff's petition was denied on August 2, 2019. (*Id.* at 3.) USCIS based its denial on the insufficiency of the record to prove two things: the executive nature of the Beneficiary's foreign position, and the executive nature of the Beneficiary's domestic position. (*Id.*; Administrative Record at 8, 13.)

## II.     Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Administrative Procedure Act (APA) allows courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Eleventh Circuit recently summarized how courts must review agency decisions:

> Our review is exceedingly deferential and limited to ensuring that the agency came to a rational conclusion. We may not conduct our own investigation or substitute our own judgment for the

>administrative agency's decision. Rather, we must consider whether the agency's decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.

*Marllantas, Inc.*, 806 F. App'x at 868 (internal quotation marks, citations, and punctuation omitted). A court can:

>find an agency action arbitrary and capricious where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Miccosukee Tribe of Indians v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (internal quotation marks omitted).

### III.   Discussion

The Defendants argue there are two independent and sufficient rationales for their denial of the Plaintiff's petition: first, that the Beneficiary's foreign position was not executive in nature; and second, that the Beneficiary's domestic position was not executive in nature. (Def.'s Cross Mot. for Summ. J., at 6.) In response, the Plaintiff argues that the agency's actions were arbitrary and capricious because the Defendants "failed to consider essential facts submitted in the record." (Pl.'s Br. in Opp'n to Def.'s Cross Mot. for Summ. J., at 12, 23.) The Plaintiff's heavy burden is two-fold here: not only must it demonstrate that the agency's decision was arbitrary and capricious, it must do so for both the foreign position and domestic position prongs. *See* 8 C.F.R.

6

§ 214.2(l)(3) (indicating that individual petitions "shall be accompanied by" evidence of the executive nature of both the beneficiary's foreign and domestic positions). Here, the Plaintiff fails at the first step, as there is no issue of material fact as to whether the Defendants' determination regarding the non-executive nature of the foreign position was arbitrary and capricious. Thus, the Defendants are entitled to summary judgment.

In their denial, the Defendants determined that the Plaintiff did not establish the Beneficiary's foreign employment was executive or managerial in nature. (Administrative Record at 8.)[2] First, the Defendants highlighted that a beneficiary "must primarily direct the management of the [] organization or a major component or function of the organization." (*Id.*) However, the Defendants found that the individuals supervised by the Beneficiary did not

---

[2] Because this action comes before the Court on an application to extend a new office petition, there are two points to be made here. First, the Court recognizes that the agency's basis for this decision contradicts its previous approval of the Plaintiff's initial new office petition. But the Defendants highlight—and the Plaintiff does not dispute—the principle that previous agency decisions do not bind the agency in future determinations on the same facts. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 23 n.4.); *see Healthy & Natural Trading LLC v. Dept. of Homeland Sec.*, Civ. A. No. CV 14-2332, 2014 WL 12564125, at *4 (C.D. Cal. Nov. 12, 2014) ("To conclude otherwise would impermissibly shift the burden from the petitioner, who bears the burden to establish entitlement to the visa, to USCIS to show that an earlier decision was mistaken."). Therefore, it appears any explanation of this change is unnecessary to support the decision. Second, because USCIS requires the filing of an L-1 status extension on Form I-129, it appears the specific evidentiary requirements for extending new office petitions must be accompanied by the general requirements of individual petitions, rather than the specific requirements replacing the general ones. *See* 8 C.F.R. §§ 214.2(l)(2)(i), (l)(3), (l)(14)(i)–(ii).

7

hold positions of managerial capacity, and these employees "instead appear to assist in the day-to-day non-qualifying duties of the business." (*Id.*) Because these subordinate employees do not operate in a managerial capacity, the Beneficiary's oversight of these activities could not be deemed executive in nature. (*Id.*) Second, the Defendants noted that "the job duties [the Plaintiff] provided for the [B]eneficiary do not make sense given the overall nature and organizational complexity of the foreign organization." (*Id.*) The Defendants claim these job descriptions provided presented inconsistencies and at times were "overly broad and generic and did not provide sufficient insight into the actual nature of the [B]eneficiary's role within the organization." (*Id.*) Finally, the Plaintiff "did not indicate the [B]eneficiary was employed abroad in a managerial capacity," and the Defendants found the record to be unsupportive even if that argument was made. (*Id.*)

In response to these findings, the Plaintiff recites the Beneficiary's claimed duties from the Plaintiff's RFE response. (Pl.'s Cross Mot. for Summ. J., at 8–9.) Next, the Plaintiff argues that the Defendants are improperly defining "executive capacity" by requiring oversight of managerial subordinates. (*Id.* at 9.) The Plaintiff highlights the statutory definitions of "managerial capacity"—which requires supervision and control of the "the work of other supervisory, professional or managerial employees"—and "executive capacity"—which does not. (*Id.*); *compare* 8 U.S.C. § 1101(a)(44)(A) *with* 8 U.S.C. § 1101(a)(44)(B). The Plaintiff argues that even if that

supervision and control were required for operating in an executive capacity, the company's RFE response and organizational chart demonstrate that supervision. (Pl.'s Cross Mot. for Summ. J., at 10–11.) Further, the Plaintiff contests the Defendants' findings that the Beneficiary was involved in non-qualifying duties, such as training sales personnel and marketing, and overseeing non-qualifying personnel. (*Id.* at 12–13.) Finally, the Plaintiff claims that its RFE responses provided enough detail to overcome the agency's determination that the Beneficiary's job duties were overly generic, and none of the claimed discrepancies were identified. (*Id.* at 14.)

While the Plaintiff here has identified counterarguments to the agency decision here, it has not shown the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The agency's denial decision appears to have considered the relevant factors and evidence, and there is no clear error in its reasoning. First, the Defendants highlight that USCIS interprets the "executive capacity" requirement that a transferee "primarily . . . direct[] the management of the organization" to require management and direction of "a subordinate level of managerial staff in the plural sense." 8 U.S.C. § 1101(a)(44)(B); (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 17–18.) The Plaintiff argues there is no legal basis for this interpretation but identifies no conflicting congressional intent or any other reasons this interpretation should not receive deference from the Court. (Pl.'s Response to Defs.' Mot. for Summ. J., at 6–7.); *see*

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . .").

The Plaintiff's remaining arguments amount to disagreements with the agency's conclusions, not a showing of arbitrary and capricious decision-making. A review of the administrative record shows that the agency clearly delineated the ultimate rationale for the denial of the petition in its RFE. (Administrative Record at 543–44.) In the RFE, USCIS noted that the petition's descriptions of the Beneficiary's job duties included "duties that could generally apply to any manager or executive acting in any business or industry and they [did] not provide sufficient insight into the actual nature of the [B]eneficiary's role within the organization." (*Id.* at 544.) To address these deficiencies, USCIS recommended a letter from an authorized representative of the foreign entity that could describe, among other things, how the Beneficiary directed the management of the organization and the scope of the latitude he had in the organization's decision-making process. *(Id.* at 545.) In response, it appears that the Plaintiff's petition provided general job duties descriptions without addressing the specifics requested in the RFE. (*Id.* at 551–53.) The RFE makes clear that the agency was seeking more detailed information to establish, for example, "the exact nature of what the Beneficiary was actually doing in his claimed direct supervision of three subordinate

10

managerial positions, and whether those position such as Sales Manager could be considered managerial such that the [B]eneficiary was directing the management of the company." (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 6.) The RFE response does not appear to address these requests. (Administrative Record at 551–53.)

Further, the parties dispute the proper weight given to the Petitioner's letter sent in response to the RFE, as the letter was authored by the Beneficiary himself. (*Id.* at 551–55.) The Defendants argue that because it is self-authored, the letter alone cannot satisfy the Petitioner's burden. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 18–19.) The Plaintiff argues that there is no legal requirement for independent evidence and claims that the RFE requests solely a letter from an authorized representative of the Petitioner, which would include the Beneficiary. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 8–9.) But this dispute does not indicate the agency made a "decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view." *Miccosukee Tribe of Indians*, 566 F.3d at 1264 (internal quotation marks omitted). Rather, it merely indicates that the agency has weighed the proffered evidence and determined that, on its own, the evidence is insufficient to satisfy the Petitioner's burden here.

Repeatedly, the Plaintiff argues that because the Petitioner's described job duties stated that the Beneficiary oversaw or directed certain functions,

11

such as the hiring and training of new employees and the organization's marketing, that the Defendants' decision is contrary to the evidence. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 11–12.) Along with the Defendants' characterization of the Beneficiary's duties as "overly broad," the Plaintiff claims the Defendants disregarded the relevant evidence. (*Id.* at 11.) However, rather than disregard the evidence, the Administrative Record indicates the Defendants differed in its conclusions drawn from that evidence. As the Eleventh Circuit recently noted in this context, merely offering evidence of qualifying executive duties entrusted to a beneficiary "does nothing to prove that he would be engaged primarily in qualifying duties." *Marllantas, Inc.*, 806 F. App'x at 869–70. The inclusion of the word "primarily" here appears to simultaneously increase both a petitioner's burden in demonstrating the time and effort allotted to these duties and the agency's discretion in evaluating the duties. As such, the Plaintiff's claims that the Beneficiary oversaw these processes, that it provided four pages of descriptions of job duties, and disputing the Defendants' characterization of certain evidence as contradictory suggests "that [the] USCIS decision was not based on a consideration of the relevant factors or that it committed any clear error of judgment." *Id.* at 870 (internal quotation marks omitted). Without such a showing, the Plaintiff cannot overcome the APA's heavy burden.

Because a showing of the executive nature of the Beneficiary's foreign position is a requirement to maintain his L-1 status, the Plaintiff's claim fails

regardless of its showing with regards to the executive nature of the Beneficiary's domestic position. *See* 8 C.F.R. § 214.2(l)(3). As such, the Court will not address those issues.

### IV.     Conclusion

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk is directed to substitute Chad F. Wolf, Acting Director of the U.S. Department of Homeland Security, for Kevin McAleenan. For the reasons set forth above, the Plaintiff's Motion for Summary Judgment [Doc. 21] is DENIED and the Defendants' Cross Motion for Summary Judgment [Doc. 27] is GRANTED.

SO ORDERED, this 24 day of November, 2020.

> /s/Thomas W. Thrash
> THOMAS W. THRASH, JR.
> United States District Judge